Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| LIZA RAMOS ALFONSECA; ESCENCIA, INC.  Parte Peticionaria  v.  PARADISO COLLEGE PREPARATORY, LLC Y OTROS  Parte Recurrida | TA2026CE00226 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan  Civil núm.: SJ2024CV05629  Sobre: Cobro de dinero, Daños y Perjuicios Contractuales |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de mayo de 2026.

Comparece la parte peticionaria, Liza Ramos Alfonseca y Escencia, Inc. (Ramos Alfonseca o peticionaria), mediante recurso de *certiorari,* y solicita que revoquemos la *Resolución[2]* emitida y notificada el 2 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala de San Juan. En el aludido dictamen, el TPI denegó la solicitud de descalificación presentada por la peticionaria.

El 19 de marzo de 2026, la parte recurrida, Paradiso College Preparatory (Paradiso o parte recurrida), presentó *Oposición a Petición de Certiorari[3]*.

Luego de analizar los escritos de ambas partes y sus anejos, así como la normativa aplicable, denegamos la expedición del auto solicitado.

### I. Trasfondo fáctico y procesal

El 21 de junio de 2024, Ramos Alfonseca instó una demanda sobre cobro de dinero y daños y perjuicios contractuales en contra

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Entrada Núm. 88 SUMAC-TPI.
[3] Entrada Núm. 5 SUMAC-TA.

de Paradiso College Preparatory, LLC, el Sr. José Roberto Acosta López, Director Ejecutivo de Paradiso, su esposa Helga Vanessa Mejías Morales y otros.[4] En resumen, la peticionaria alegó que fue contratada por la recurrida para efectuar varias gestiones con el fin de que Paradiso pudiera obtener los permisos necesarios para brindar servicios de educación y obtener las certificaciones necesarias del Departamento de Educación, y que Paradiso dejó de pagarle, a pesar haber rendido los servicios para los cuales fue contratada. También añadió que fue contratada por Paradiso para salvar un proyecto de escuela ubicado en Río Piedras ante una demanda presentada por el Municipio de San Juan y para salvar el proyecto de la escuela ubicada en Arecibo. La peticionaria indicó que, acordaron remunerarla a razón de una tasa equivalente entre 1% a 2.5% del total del proyecto Paradiso de $10,000.00 a $20,000.00. En vista de lo anterior, reclamó que Paradiso le adeudaba $625,000.00, ($600,000 y $25,000.00 relacionados a servicios prestados durante los meses de octubre, noviembre y diciembre de 2023).

Por último, Ramos Alfonseca alegó que "en algún momento de diciembre de 2023", varios participantes y empleados de Paradiso, hicieron expresiones calumniosas sobre ella al Lcdo. Daniel Martínez (en adelante, licenciado Martínez Avilés) que la acusaban de extorsionarlos a ellos y a Paradiso[5]. Por dichas expresiones, la señora Ramos reclamó una indemnización no menor de $300,000.00. También añadió, sin especificar, que "otras acciones" de Paradiso, "a través de sus socios y representantes, le han causado daños, sufrimientos y angustias mentales que se estiman

---

[4] Ramos Alfonseca también incluyó como demandados a Brenton Nevárez y a Compañías A, B y C.
[5] Véase, inciso 15 de la *Demanda,* Entrada Núm. 1 SUMAC-TPI.

en una suma no menor de $200,000.00". Los recurridos presentaron sus respectivas contestaciones a la demanda.[6]

Luego, el 24 de febrero de 2025, Paradiso presentó una *Moción Uniéndonos a la Representación Legal de la Parte Demandada*[7] a los fines de formalizar la comparecencia del Lcdo. Daniel Martínez de Avilés de ML Law Group como representante legal de Paradiso. Además, expresó que el licenciado Martínez Avilés ha sido el representante legal de Paradiso desde agosto de 2023. Ese mismo día el TPI emitió orden en la que autorizó la representación legal del licenciado Martínez Avilés.[8] Resulta pertinente señalar que Ramos Alfonseca no se opuso a la solicitud de representación legal de Paradiso y tampoco solicitó reconsideración a la orden del tribunal que autorizó al licenciado Martínez Avilés como representante legal de Paradiso.

El 19 de marzo de 2025, Paradiso presentó una *Moción Informativa*[9]. Junto a esta, acompañó como anejo y de forma confidencial[10] una *Solicitud de Orden Protectora*[11]. La recurrida alegó que, el 11 de marzo de 2025, recibió de parte de Ramos Alfonseca el *Informe de Manejo de Caso* del cual surgía que la peticionaria había anunciado al licenciado Martínez Avilés —abogado de Paradiso— como testigo. A tenor, Paradiso solicitó una orden protectora a los fines de impedir que el licenciado Martínez Avilés fuera llamado como testigo en el caso.[12] Paradiso reiteró su solicitud de orden

---

[6] El 31 de enero de 2025 y el 5 de febrero de 2025, José Roberto Acosta y su esposa Helga Mejías Morales presentaron su contestación a demanda. Estos comparecieron representados por el Lcdo. Carlos F. Padín Pérez (ver Entradas Núm. 25 y 27 SUMAC-TPI). **El 6 de febrero de 2025, Paradiso presentó su contestación a demanda, representada por la Lcda. Zorimar W. Torres Mercado del Bufete ML Law Group** (Entrada Núm. 29 SUMAC-TPI).

[7] Entrada Núm. 32 SUMAC-TPI.

[8] Entrada Núm. 33 SUMAC-TPI.

[9] Entrada Núm. 36 SUMAC-TPI.

[10] Alegó que presentaba la solicitud de orden protectora y sus anejos de forma confidencial porque parte de la información y evidencia contenida es privilegiada (privilegio abogado-cliente).

[11] Paradiso justificó la presentación confidencial de la solicitud de orden protectora en que la información contenida en esta estaba protegida por el privilegio abogado-cliente.

[12] El 21 de marzo de 2025, Paradiso presentó una moción informativa (Entrada Núm. 37 SUMAC TPI) en la que acompañó su parte del borrador del informe de

protectora el 9 de abril de 2025.[13] El 16 de abril de 2025, la señora Ramos presentó su oposición a que se concediera la solicitud de orden protectora[14]. El 12 de mayo de 2025, notificada el 13 de mayo de 2025, el TPI declaró No Ha Lugar la solicitud de orden protectora.[15]

Luego de varios trámites procesales, el 28 de agosto de 2025, Ramos Alfonseca presentó una *Moción Solicitando la Descalificación de la Representación Legal de Paradiso College Preparatory, LLC*[16]. Expuso que, "desde inicios del pleito" le ha expresado a Paradiso que existe un conflicto que impide que el licenciado Martínez Avilés y su bufete continúen representando a Paradiso y alegó que, durante el caso instado por el Municipio de San Juan, el licenciado Martínez Avilés le solicitó a la señora Ramos varios servicios a favor de Paradiso que son parte del reclamo de esta en su demanda.

El 29 de septiembre de 2025, Paradiso presentó su *Moción en Cumplimiento de Orden y en Oposición a Moción Solicitando Descalificación de la Representación Legal de Paradiso College Preparatory, LLC*[17]. Señaló que el único propósito detrás de la solicitud de descalificación del licenciado Martínez Avilés y el bufete ML Law Group era privar a Paradiso de su representación legal en esta etapa de los procedimientos con el fin de afectar indebidamente su defensa. También levantó el privilegio de abogado-cliente. Por su parte, el 1 de octubre de 2025, la peticionaria presentó *Breve R[é]plica a Oposición a Moción Solicitando la Descalificación de la Representación Legal de Paradiso College Preparatory, LLC*[18].

---

manejo de caso, pues la presentación del informe dependía de lo que el TPI resolviera en cuanto a la solicitud de orden protectora.

[13] Entrada Núm. 47 SUMAC-TPI.

[14] Véase *Moción Cumpliendo Orden de 24 de marzo de 2025 (Ent. 41) y en Oposición a Moción Informativa de Paradiso College Preparatory* (Entrada Núm. 50 SUMAC-TPI) y *O[p]osición a Moción Urgente Informativa en Solicitud de Orden Protectora (Ent. 47) Presentada por Paradiso College Preparatory LLC* (Entrada Núm. 51 SUMAC-TPI).

[15] Véase, *Orden,* Entrada Núm. 53 SUMAC-TPI.

[16] Entrada Núm. 75 SUMAC-TPI.

[17] Entrada Núm. 81 SUMAC-TPI.

[18] Entrada Núm. 82 SUMAC-TPI.

Mientras, el 9 de octubre de 2025 se celebró la vista de conferencia inicial[19]. Conforme surge de la minuta de los procedimientos, el TPI, luego de escuchar los planteamientos de las partes, determinó paralizar los asuntos hasta tanto atendiera la solicitud de descalificación.

Finalmente, el 2 de diciembre de 2025, el TPI emitió y notificó la *Resolución* recurrida[20] en la que denegó la solicitud de descalificación solicitada por Ramos Alfonseca. En lo aquí pertinente, el TPI resolvió que la peticionaria no puso al tribunal en posición de imponer el remedio drástico de la descalificación del licenciado Martínez Avilés y que, aunque esta lo anunció como testigo, no demostró la justa causa para ello, pues según las alegaciones de la demanda sobre cobro de dinero y daños contractuales, cualquier prueba testifical o documental podía obtenerse por medios menos onerosos sin tener que involucrar al abogado de Paradiso. Asimismo, determinó que las alegaciones sobre la descalificación eran generales, y que ante dichas circunstancias, era improcedente que se citara o anunciara al licenciado Martínez Avilés como testigo. El *foro a quo* añadió que, en esta etapa de los procedimientos, no se había establecido que el licenciado Martínez Avilés fuera a testificar en el juicio y que su testimonio fuera adverso a su cliente. Por esos mismos fundamentos, el TPI determinó que era improcedente y prematura la solicitud de descalificación del bufete ML Law Group.

Inconforme, Ramos Alfonseca solicitó reconsideración el 17 de diciembre de 2025[21] y el 22 de diciembre de 2025, Paradiso presentó su oposición[22].

---

[19] Véase, *Minuta*, Entrada Núm. 74 SUMAC-TPI.
[20] Entrada Núm. 88 SUMAC-TPI.
[21] Entrada Núm. 90 SUMAC-TPI.
[22] Entrada Núm. 91 SUMAC-TPI.

El 23 de enero de 2026, el TPI emitió declaró No Ha Lugar la solicitud de reconsideración de la peticionaria.

Inconforme, Ramos Alfonseca acude ante nos y le imputa al TPI la comisión de los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE DESCALIFICACIÓN DEL BUFETE DEL LCDO. DANIEL MARTÍNEZ AVILÉS.
>
> SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A ACLARAR LA RESOLUCIÓN RECURRIDA EN LO QUE RESPECTA A LA APARENTE ELIMINACIÓN DEL LCDO. DANIEL MARTÍNEZ AVILÉS COMO [T]ESTIGO DE LA DEMANDANTE.
>
> TERCER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO CONCEDE UNA ORDEN PARA QUE PARADISO COLLEGE PREPARATORY, LLC PRODUJERA LOS DOCUMENTOS SOLICITADOS.

El 19 de marzo de 2026, Paradiso presentó *"Oposición a Petición de Certiorari"*.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II. Exposición del derecho

### a. El *certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[23]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[24] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se

---

[23] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

[24] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[25], se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[25] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra,* enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari,* mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[26]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[27] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B. Discreción Judicial**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[28] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[29]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una

---

[26] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[27] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[28] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* supra, pág. 155.
[29] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

conclusión Justiciera'".[30] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[31] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[32]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[33]

## III. Aplicación del Derecho a los Hechos

Al evaluar la petición de *certiorari*, concluimos que no existe justificación alguna para intervenir con la resolución recurrida. La parte peticionaria no presentó argumentos que demuestren que, al emitir su determinación, el TPI actuara de forma arbitraria o caprichosa, o en abuso de su discreción o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho. Tampoco identificamos fundamento alguno que justifique expedir el auto de *certiorari* para evitar un fracaso de la justicia.

Por tanto, ante la ausencia de justificación para intervenir con el dictamen recurrido, nos abstenemos de intervenir en el asunto y denegamos expedir el auto de *certiorari*.

## IV. Parte dispositiva

---

[30] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 657–658 (1997).

[31] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular,* supra.

[32] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra, pág. 658.

[33] *SLG ZapataRivera v. J.F. Montalvo,* supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

A la luz de lo antes expuesto, denegamos la expedición del auto de *certiorari*.

**Notifíquese.**

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones